Elhanani v Kuzinez (2024 NY Slip Op 51687(U))

[*1]

Elhanani v Kuzinez

2024 NY Slip Op 51687(U)

Decided on December 13, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 13, 2024
Supreme Court, New York County

Eran Elhanani and THE ELHANANI GROUP INC., Plaintiffs,

against
Boris Kuzinez, FIVE POINTS DEVELOPMENT LLC, and FIVE POINTS II LLC, Defendants.

Index No. 655350/2017

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 006) 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 181, 182, 183, 184, 186, 188 were read on this motion to/for AMEND CAPTION/PLEADINGS .
This action arises from an alleged oral agreement between plaintiff Elhanani and defendant Kuzinez for plaintiffs to serve as broker and financing agent for various real estate transactions for defendants' development project. Plaintiffs allege that defendants have breached the oral agreement by terminating their services and denying them the right to serve as exclusive broker for the sales of apartment units in the completed building. In this motion, defendants seek (1) leave to amend and supplement their answer to add defenses, notably for statute of frauds; and (2) summary judgment dismissing plaintiffs' first, fourth, and fifth causes of action. For the following reasons, the motion is granted.
I. BACKGROUND
The following facts are undisputed except where noted.
In June 2014, defendant Kuzinez, a foreign real estate developer, retained plaintiff Elhanani as a residential real estate broker to purchase a high-end residence in Manhattan. Dissatisfied with the apartments available in the market, Kuzinez began plans to build a luxury residence exactly to his liking, and asked Elhanani to locate potential commercial real estate upon which to build a residential building (the Development).
According to plaintiffs, at this time, Kuzinez orally promised Elhanani that Elhanani would become the exclusive director of sales and marketing for the new development on the properties purchased, which position would commence once the Development was completed. Plaintiffs also assert that Kuzinez promised Elhanani that he would have the exclusive right to serve as broker for apartment units in the Development. In exchange, Elhanani would accept 1% commission on the various real estate transactions necessary for the Development—2% lower than what plaintiffs describe as the customary 3% rate. Defendants dispute the existence of this oral agreement.
To complete the Development, defendants sought to purchase three contiguous buildings on the southwest corner of Fifth Avenue and East 29th Street in Manhattan, comprised of 260, 262, and 264 Fifth Avenue, along with development air rights from nearby buildings, with the [*2]intent to build a mixed-use residential skyscraper over 54 stories tall, with 200,000 buildable square feet.
From December 4, 2014 to January 4, 2017, defendants purchased the buildings at 262 and 264 Fifth Avenue and the air rights appurtenant to 254 and 256 Fifth Avenue, and paid Elhanani approximately 1 to 1.5% of the purchase price in commission payments.
Plaintiffs assert that, in June 2016, Kuzinez terminated Elhanani's services as broker and hired new real estate brokers to sell apartments in the completed Development. Elhanani was advised that he was being removed because Kuzinez did not feel Elhanani possessed the sales record to succeed at selling apartments in the Development.
Plaintiff commenced this action on August 14, 2017 via a summons and a complaint, asserting causes of action for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, and a declaratory judgment.
Plaintiffs allege, essentially, that defendants breached the parties' oral agreement in the following ways: (1) depriving plaintiffs of their exclusive right to sell apartments in the Development once completed; (2) depriving plaintiffs of their right to be the "Director of Sales and Marketing" of the Development; (3) in the alternative, failing to pay plaintiffs the full un-discounted commissions on all of the sales Elhanani brokered; and (4) failing to pay plaintiffs 1% commission for the air rights transactions involving 254 Fifth Avenue and 256 Fifth Avenue.
On June 8, 2020, the parties filed a Stipulation and Partial Settlement and Notice of Partial Discontinuance (NYSCEF doc No. 52) as to the fourth above-alleged breach, as defendants paid plaintiffs that amount subsequent to the filing of the complaint.
On February 22, 2018, the court, by Justice Eileen Bransten, granted defendants' motion to dismiss the complaint in its entirety (Elhanani v Kuzinez, Sup Ct, NY County, March 21, 2018, Bransten, J., index No. 655350/2017 [NYSCEF doc No. 21]). As relevant here, the court dismissed the breach of contract cause of action on the basis that plaintiffs had failed to articulate the terms of the agreement with sufficient definitiveness (id.). The court also noted, "What is even more concerning to the Court which has not been expressly argued by any party, although alluded to, is why this agreement falls outside the Statute of Frauds' written requirements," noting that a contract of "indefinite duration" "is not by its terms performable within a year" and must therefore be "in writing and signed by the party to be charged" pursuant to General Obligations Law § 5-701 (a) (1). Justice Bransten also observed that the construction of a 1000-foot-tall building, "by definition," cannot take place within a year (id.).
On May 23, 2019, the Appellate Division, First Department reversed the court's decision on the motion to dismiss, reinstating the complaint in its entirety. As relevant here, the First Department noted that "[t]he complaint sufficiently states a claim for breach of contract as it asserts all material and essential terms of the contract" (Elhanani v Kuzinez, 172 AD3d 590, 591 [1st Dept 2019]). In addition, the First Department noted that "[t]he complaint should not have been dismissed pursuant to the statute of frauds. As an initial matter, defendants did not move to dismiss based on the statute of frauds and plaintiffs were not afforded the opportunity to address the issue." It further observed, "[m]oreover, the statute of frauds is inapplicable here as General Obligations Law § 5-701 (a) (10) specifically exempts contracts to pay compensation to licensed real estate brokers, which is the type of contract alleged by plaintiffs."
Defendants filed an answer to the complaint on July 22, 2019, asserting thirty-six defenses.
On June 4, 2024, defendants filed the instant motion, requesting to amend the answer to [*3]add two additional defenses: (1) that "the project currently being built is not the same, and has material differences from, the Development that the parties contemplated in 2014 and that the plaintiffs sued upon in 2017" and (2) that the oral agreement plaintiffs allege is "barred by the Statute of Frauds (GOL § 5-701 [a] [1]) as the agreement is for an indefinite term with no expiration date and separately because it could not be completed within a year of its making" (Graifman affirmation, exhibit F ¶ 38). Plaintiffs oppose the motion.
II. DISCUSSION
Amend
Pursuant to CPLR 3025, a party may amend a pleading "at any time by leave of court" (CPLR 3025 [b]). "While it is true that on a motion for leave to amend [a pleading] the movants need not establish the merit of [their] proposed new allegations, they must show that the proffered amendment is not palpably insufficient or clearly devoid of merit" in light of evidentiary proof (Sahmanovic v Kingsbridge Realty Assoc., LLC, 197 AD3d 1077, 1077 [1st Dept 2021]; see Am. Theatre for the Performing Arts, Inc. v Consol. Credit Corp., 45 AD3d 506, 506 [1st Dept 2007]). Otherwise, leave to amend "should be freely granted, absent prejudice or surprise resulting therefrom" (MBIA Ins. Corp. v. Greystone & Co., Inc., 74 AD3d 499, 499 [1st Dept 2010]).
The question is whether the proposed amended defenses have any merit as defenses to plaintiffs' claims.
First, the parties do not argue the merits of the proposed thirty-seventh defense, that the project contemplated in 2014 is not the same as the project currently being built. Defendants do not explain how this is a defense to plaintiff's claims  whether in the proposed answer or in their memoranda in support of this motion. However, plaintiffs also do not oppose the addition of these allegations. Accordingly, amendment is granted to this extent.
Second, defendants seek to add a thirty-eighth defense that, because the purported oral agreement cannot be fully performed within one year and yet is not evidenced by any writing, it violates the statute of frauds of General Obligations Law 5-701 (a) (1) and is therefore void.
General Obligations Law § 5-701 (a) (1) states that, if an agreement or promise "by its terms is not to be performed within one year from the making thereof," it is "void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent."
As Justice Bransten previously observed, it is a plain matter of fact that the construction of a 1,000-foot-tall building in New York City cannot be done within a year. In addition, at his deposition, plaintiff Elhanani admitted that the project would take "between three and a half to five years, minimum" (Eran Elhanani deposition tr at 170). He also admitted that the agreement to be the exclusive Director of Sales and Marketing was not to have commenced until the development was finished (id. at 169). Defendants argue that, therefore, both the terms of the exclusive right to sell apartments and the appointment as Director of Sales and Marketing could not have been performed until the development was completed, which would, by Elhanani's own admission, take at least three and a half years.
The court finds that defendants sufficiently demonstrate that this defense is not "palpably insufficient or clearly devoid of merit" (Sahmanovic).
Plaintiffs fail to demonstrate that they would be prejudiced by the amendments. While plaintiffs point to defendants' delay in bringing the amendment motion, "lateness alone is not a barrier to the amendment of pleadings," and plaintiffs must demonstrate "significant prejudice as [*4]well"—that is, "some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided had the original pleading contained what the amended one wants to add" (Barbour v Hosp. for Special Surgery, 169 AD2d 385, 386 [1st Dept 1991]). Plaintiffs have not made that showing here, and defendants' motion for leave to amend their answer is therefore granted.
Summary Judgment
Defendants also seek summary judgment based on their proposed new affirmative defenses, dismissing the first, fourth, and fifth causes of action, respectively for breach of contract, promissory estoppel, and a declaratory judgment.
The court notes that defendants have failed to comply with Rule 24 of the Rules of the Commercial Division by notifying the court prior to filing a summary judgment motion so that the court may hold a conference with the parties (see Rules of the Commercial Division [22 NYCRR 202.70 [g]] rule 24). However, the court exercises its discretion to overlook this omission (see CPLR 2001).
"[L]eave to amend to include a defense and summary judgment based on that defense may be sought in one motion rather than two, and both items of relief granted if, in addition to the absence of prejudice or surprise, it is clear that there is nothing that the plaintiff can do to obviate the defense" (Armstrong v Peat, Marwick, Mitchell & Co., 150 AD2d 189, 190 [1st Dept 1989]).
It is well established that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Once the movant makes the proper showing, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
The question, therefore, is whether defendants have submitted sufficient proof to eliminate any material issues of fact as to whether their affirmative defenses are valid, and whether they dispose of the claims in this action.
With respect to plaintiffs' breach of contract claim, as previously discussed, defendants establish, prima facie, that the purported oral agreement could not have been completed within one year, and therefore, without writing, is void. Plaintiffs must therefore rebut the showing by demonstrating an issue of material fact (see Stillman v Kalikow, 22 AD3d 660 [1st Dept 2005]).
In opposition, plaintiffs do not dispute that the purported oral agreement could not have been performed within a year. Instead, plaintiffs argue that the oral agreement is exempted from the Statue of Frauds by General Obligations Law § 5-701 (a) (10). Plaintiffs argue that the First Department, in the appeal of the motion to dismiss on this case, has already ruled that the oral agreement does not fall within the statute of frauds, and that its ruling is law of the case (see Elhanani v Kuzinez, 172 AD3d 590).
In the court's view, the First Department did not reach the issue of whether General Obligations Law § 5-701 (a) (10) actually applies to the facts of this case. In its decision, the First Department observed that the court erred in considering the statute of frauds where defendants did not raise it. Indeed, when the trial court considered the prior motion to dismiss, the parties had not raised the statute of frauds as a defense or presented to the court any factual [*5]predicate for finding that the agreement could not be performed within a year. At the time, the parties had not presented to the court Elhanani's own admission that the Development would take at least three and a half years to complete (Eran Elhanani deposition tr at 170).
Accordingly, when the Appellate Division observed that subsection (a) (10) exempts the agreement from the statute of frauds, it did not have before it any facts establishing that the agreement could not be performed in a year. Indeed, the First Department has consistently held that subsection (a) (10)'s exemption of agreements for real estate brokerage fees from the statute of frauds is "not applicable" where "the proposed brokerage agreement provides for a term exceeding one year" (Real Estate Economic Resources, Inc. v Armendariz, 162 AD2d 303, 304 [1st Dept 1990]; see LHWS LLC v S.L. Green Realty Corp., 206 AD3d 411 [1st Dept 2022]; LHWS LLC v S.L. Green Realty Corp., 225 AD3d 450, 450 [1st Dept 2024]).
In Real Estate Economic Resources, plaintiff mortgage broker sought to recover commission allegedly earned in securing a mortgage for defendant based on an oral agreement. Plaintiff sent defendant a proposed brokerage agreement with a term exceeding a year, which defendant never signed. Defendant answered with affirmative defenses, including that the action was barred by the statute of frauds. The First Department held that, "[a]lthough a broker is exempt from the provisions of the statute of frauds (GOL § 5-701 [a] [10]) . . . the exemption from the statute of frauds is not applicable herein as the proposed brokerage agreement provides for a term exceeding one year" (Real Estate Economic Resources, Inc. at 304, citing Gurney, Becker & Bourne, Inc. v Simon, 89 AD2d 795 [4th Dept 1982]).
Similarly, in LHWS LLC (206 AD3d 411 [1st Dept 2022]), plaintiff broker sought brokerage commission based on a lease with an option to purchase property that could only be exercised after a year and three months. The First Department dismissed the action pursuant to General Obligations Law § 5-701 (a) (1) because the option could not be performed within one year from plaintiff's engagement by defendant. Later, when plaintiff sought to amend its complaint to add additional facts that it had introduced a buyer who was purportedly able to pay for a purchase within one year, the First Department found that this "changes nothing," as ultimately plaintiff broker did not produce a purchaser who was ready, willing and actually able to purchase the subject premises within one year (see LHWS LLC v S.L. Green Realty Corp., 225 AD3d 450, 412 [1st Dept 2024]). Accordingly, the court found that the proposed amendments lacked merit, as the claim was still subject to the statute of frauds.
Noting that the present motion marks the first time the statute of frauds issue has properly been raised in this action, the court finds that the exemption of subsection (a) (10) does not apply to an agreement rendered void by subsection (a) (1). While the purported oral agreement is subject to both subsections (a) (1) and (a) (10), as the First Department has consistently held, these provisions operate separately. Even if the agreement is exempted from subsection (a) (10), it is separately voidable under (a) (1).
Therefore, the purported oral agreement must be evidenced by a written agreement or some note or memorandum thereof, subscribed by defendants, or by defendants' agent.
Plaintiffs argue that, even if the statute of frauds applies, certain email correspondence serves as written notes or memoranda sufficient to satisfy the statute (see General Obligations Law § 5-701 [a]).
"It is well established that the statutorily required writing need not be contained in one single document, but rather may be furnished by piecing together other, related writings" (William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 477 [*6][2013]). However, "to satisfy the Statute of Frauds, the '[writings] must contain substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from [them] what the agreement is'" (Kobre v Instrument Sys. Corp., 54 AD2d 625, 626 [1st Dept 1976], citing Std. Oil Co. v Koch, 260 NY 150, 155 [1932]). "If instead of including substantially the whole agreement and all its material terms, the note or memorandum relied upon evidences 'a contract in terms and conditions different from that which the parties entered into, it fails to comply with the statute'" (Kobre, 54 AD2d at 626). In addition, if the none of the writings are "subscribed by the party to be charged," the documents are insufficient to overcome the statute of frauds (D'Esposito v Gusrae, Kaplan & Bruno PLLC, 44 AD3d 512, 513 [1st Dept 2007]).
Plaintiffs submit emails between Elhanani and Rani Attar, Kuzinez's agent, that show that Elhanani would be paid "1% of the purchase price" on commission of the projects he brokered in exchange for "sales and marketing of the project" (Elhanani aff, exhibit 2 at 1, 3).
In the emails submitted by plaintiffs, Elhanani states as follows:
"In regards to myself then on this specific deal . . . I should be compensated as a broker from the purchase price by the seller. I'm not sure yet how much since I didn't discuss it with the other side [sic] broker yet and it might depend on the purchase price, but I would expect it to be 0.5-1% of the purchase price. Obviously if you and Boris would like to give me another like 0.5% that would be great but as you know I'm not greedy and will take whatever I can get" (Elhanani aff, exhibit 2).
Further, he states,
"Regarding the option to be part of the development team he will build in NYC then I would be happy to be part of it if he's interested but I don't expect anything up front. . . If he'll feel like I'm worth investing in then great and if not then I'll just be his broker as long as he'll be interested in that" (id.).
Later, he also states, "I'm not getting any commission at all from the sale price and the seller's broker is taking 2%. Again, I will be happy with 1% and of course would love to do the sales and marketing" (id.).
These emails only evidence Elhanani's request for, or, at most, an offer of the commission price he desired to receive in exchange for performing sales and marketing services. They fall far short of a confirmation of any existing oral agreement. Even if these emails could be understood to refer to a previously discussed agreement, they do not demonstrate any agreement that Elhanani would forego 2% of the purportedly customary 3% commission in exchange for a Director of Sales and Marketing role after the completion of the project, and they do not at all discuss an exclusive right to broker sales of the apartments.
In fact, instead of including substantially the whole agreement and all its material terms, the notes or memoranda relied upon evidences "a contract in terms and conditions different from that which the parties entered into" and therefore "fail[] to comply" with the statute of frauds (Kobre 54 AD2d at 626).
Plaintiffs' other evidence does no more to support the existence of the oral agreement. Plaintiffs also submit Elhanani's list of prospective development sites at the outset of the project, his invoices for acquisitions of the properties that would house Kuzinez's planned development, representations by Attar introducing Elhanani as "our broker," and Elhanani's negotiations with [*7]third party financiers for the construction of a new building (Elhanani aff ¶¶ 19-40, exhibits 3-10). None of these documents demonstrate that the parties contemplated Elhanani becoming the Director of Sales and Marketing after the completion of the construction project or that he would have the exclusive right to broker sales of the apartment units after the completion of the construction project. Furthermore, other emails that plaintiffs submit as proof of the parties' performance under the purported oral agreement, at exhibits 9 and 10, are between Elhanani and other marketing brokers, and not sent to defendants or their agent. Therefore, as they are not "subscribed by the party to be charged," they cannot serve as writings to confirm the oral agreement (D'Esposito).
Accordingly, the breach of contract claim is dismissed.
Defendants also seek to dismiss plaintiffs' claim for promissory estoppel. In the promissory estoppel claim, plaintiffs allege that defendants made a promise that Elhanani would serve as the exclusive broker for the development's residential units (complaint ¶ 98). For the same reasons as explained above, this claim is barred by General Obligations Law § 5-701 (a) (1).
Lastly, defendants seek to dismiss plaintiffs' claim for a declaratory judgment. In the declaratory judgment claim, plaintiffs seek a declaration that plaintiffs have the right to serve as exclusive broker for all future residential sales in the Development based on the "September 2014 contract" (complaint ¶ 104). Because the declaratory judgment is based on the same oral agreement or promise, it must also be dismissed. Indeed, any such declaration would serve no useful purpose in light of the court's ruling herein on the first and fourth causes of action (see James v Alderton Dock Yards, Ltd., 256 NY 298 [1931]).
Accordingly, it is
ORDERED that the part of defendants' motion for leave to amend their answer is granted, and the amended answer in the proposed form annexed to the moving papers shall be deemed served upon service of a copy of this order with notice of entry thereof; and it is further
ORDERED that the part of defendants' motion for partial summary judgment is granted, and plaintiffs' first, fourth, and fifth causes of action are dismissed.
DATE
ROBERT R. REED, J.S.C.